In the Matter of the Application of the CITY OF NEW YORK, Respondent, Relative to Acquiring Title to Lands Required for the Opening of Pugsley Avenue.

MARY V. BROOKE et al., Appellants.

New York (city of) — street opening proceedings — erroneous assessment for benefits — when part of lots so assessed are subject to assessments for sewer, and part not subject, an assessment of all of the lots at a uniform rate per lot front is inequitable and erroneous.

1. The action of commissioners in proceedings, such as a sewer easement proceeding, is to be ascertained by the final report of the commission. Until that report is filed the commission has not in any legal sense fixed the awards and assessments. The affidavit of one of the commissioners in advance of the filing of the report as to the nature of the report which that commissioner at that time supposed the commission would ultimately make is unauthorized and irregular, and suggests a practice which is not approved.

2. Where, within an area, declared by the board of estimate and apportionment of the city of New York, liable to an assessment for

benefits in a proceeding for opening and extending streets, there were a number of lots subject to an easement for sewer purposes, for which an assessment had not yet been perfected, and the commissioner of assessment in the street opening proceeding, without taking into consideration the fact that some of the lots were incumbered with the proposed sewer assessment, assessed all of the lots within the area assessable for the street opening at a uniform rate per front lot, such assessment is unfair and inequitable, and is equivalent to a determination that the acquisition of land for the opening of the streets results in equal benefits to lands which are subject to the sewer easement and to lands which are free from such easement. Thus the owners of lands subject to the sewer easement are required to pay the cost of acquiring this easement and in addition the assessment for the street opening, while the owners of lands not subject to the sewer easement are assessed only for the street, and are not required to pay anything for the sewer easement included in the fee of the land acquired in this proceeding. The assessment is, therefore, erroneous, and the order confirming it should be reversed and the matter remitted to the commissioner of assessment for correction. (*People ex rel. Keim* v. *Desmond*, 186 N. Y. 232, followed.)

*Matter of City of New York* (*Pugsley Ave.*), 169 App. Div. 564, reversed.

(Argued April 13, 1916; decided May 9, 1916.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered November 11, 1915, which reversed an order of Special Term sustaining objections to the report of the commissioner of assessment in street opening proceedings and confirmed said report.

The facts, so far as material, are stated in the opinion.

*Benjamin Trapnell* for Mary V. Brooke, appellant. In applying a uniform rate of assessment to appellant's land north of Lacombe avenue and to the land south of that avenue, and thus ignoring the fact that a sewer easement had already been acquired through appellant's land for which she is about to be assessed, the commissioner of assessments committed an error of law resulting in a violation of the principle that such assessments must be

imposed in proportion to relative benefits. (*People ex rel. Keim* v. *Desmond,* 186 N. Y. 232; *O'Reilly* v. *Kingston,* 114 N. Y. 448; *People ex rel. Brockport* v. *Sutphin,* 166 N. Y. 163.)

*James F. Donnelly* for Georgie A. McDonald, as executrix of John B. McDonald, deceased, appellant. Since there was a complete opening south of Lacombe avenue, and since so much of the land as lay south of Pugsley creek was previously inaccessible and received access by this proceeding, a different proportional benefit resulted in that section, and the levy of a uniformly proportionate assessment in both sections, as well as in the section to the north where there was only a partial opening, was erroneous. (Code Civ. Pro. § 1338; *Hearst* v. *N. Y. C. & H. R. R. R. Co.,* 215 N. Y. 268; *Matter of Spofford Ave.,* 126 App. Div. 740; *Matter of East 222d Street,* N. Y. L. J. Jan. 13, 1913; *People ex rel. Keim* v. *Desmond,* 186 N. Y. 232.) The entire assessment was created upon an erroneous theory. (*Sundstrom* v. *New York,* 213 N. Y. 68; *Hearst* v. *N. Y. C. & H. R. R. R. Co.,* 215 N. Y. 268.)

*Lamar Hardy, Corporation Counsel* (*Joel J. Squier* and *John J. Kearney* of counsel), for respondent. The assessment was levied by the commissioner of assessment in accordance with the benefit. (*Matter of City of New York* [*West 225th Street*], 150 App. Div. 223; *Matter of Spofford Ave.,* 126 App. Div. 740; *Matter of East 136th St.,* 127 App. Div. 672; *Matter of West 163d St.,* 151 App. Div. 725; *Matter of East 222d St.,* 164 App. Div. 880; *Matter of Cruger,* 84 N. Y. 619.)

SEABURY, J. This appeal presents the question whether assessments levied upon lands within a designated area of assessment are proportionate to the benefits which the lands of the appellants derived from the improvement sought to be effected through this proceeding. The proceeding was instituted pursuant to a resolution of the

board of estimate and apportionment of the city of New York, to acquire title to lands required for the opening and extending of Pugsley avenue from McGraw avenue to Clason's Point road. By a subsequent resolution the proceeding was amended so as to include portions of Cornell, Ellis and Newbold avenues at the junction of these avenues with Pugsley avenue. Pugsley avenue as acquired in this proceeding has a length of nearly two miles extending from McGraw avenue southerly to Clason's Point road. The property which is the subject of this proceeding is situated in the borough of The Bronx. Prior to the vesting of the title of the land for Pugsley avenue, a proceeding had been instituted by the city of New York to acquire an easement for sewer purposes in certain lands including portions of Pugsley avenue. The commissioners in the sewer easement proceeding were appointed prior to July 16th, 1906, on which date title vested in the city to the easement for sewer purposes in the land embraced within the limits of the sewer easement proceeding. The report of the commissioners in that proceeding had not been made or confirmed by the court prior to the filing of the final report in the present proceeding. At the time the report in this proceeeding was before the Special Term upon the motion for confirmation not only had the report in the sewer easement proceeding not been approved but it had not yet been made. The only information which we now have as to the conclusion reached in the sewer easement proceeding is that given in the affidavit of one of the commissioners in that proceeding. This affidavit was presented by the city to meet the objection of the appellants herein that the report in this proceeding should not be confirmed until the report in the sewer easement proceeding had been confirmed. In this affidavit one of the commissioners assumes to disclose what the future report of the commission would be. It is from this affidavit which is sup-

posed to foreshadow the report of the commission in the sewer easement proceeding that we learn " that prior to the acquisition of title for sewer purposes * * * the land was free and unencumbered, and that the awards estimated by the commissioners for the acquisition of said sewer easement were equivalent to 90 per cent of the value of said fee unencumbered by such easements, and that, therefore, the fee of the land remaining in the property owner was of the value of 10 per cent of its unencumbered fee value. Deponent avers that the commissioners gave instructions that their report be prepared so that it would show that they awarded 90 per cent of the unencumbered fee value for such parcels and that said report of the commissioners has not yet been made up either as to awards or assessments, but is now in process of preparation." As the conclusion we have reached upon the merits of the questions involved depends upon the fact that the lands of the appellants are subject to an easement for sewer purposes, and not upon the awards and assessments that are expected to be made in that proceeding, it is proper that we should decide the questions presented upon this appeal. In so doing we do not approve the practice that was pursued in this case. The affidavit of one of the commissioners in the sewer easement proceeding as to the awards and assessments which he supposed the commission of which he was a member would ultimately announce is without legal force or effect. The action of commissioners in proceedings such as the sewer easement proceeding is to be ascertained by the final report of the commission. Until that report is filed the commission have not in any legal sense fixed the awards and assessments. The affidavit of one of the commissioners in advance of the filing of the report as to the nature of the report which that commissioner at that time supposed the commission would ultimately make is unauthorized and irregular and suggests a practice which we do not wish to be understood as approving.

The land within the lines of Pugsley avenue formed only a portion of the territory in which the sewer easement was taken. From McGraw avenue to Westchester avenue, Pugsley avenue is acquired as a street 60 feet wide. From Westchester avenue to Clason's Point road the width of the avenue is 80 feet. The rate of assessment in this proceeding is the same throughout the whole area of assessment, regardless of whether or not the land assessed was adjacent to the strip in which the sewer assessment had been previously acquired. The rate of assessment per lot abutting on the street which was adopted in this proceeding was $84.40. The appellant the McDonald estate and the appellant Brooke both own lands affected by this proceeding, some part of which was also taken in the sewer easement proceeding. Indeed, the greater portion of the lands of these appellants is adjacent to and forms part of the land in which the sewer easement has been acquired. The appellants objected to the confirmation of the report of the commissioner in this proceeding on the ground: (1) That the assessment is levied upon land adjacent to and forming part of the land in which the sewer easement has been acquired at the same rate that it is levied upon lands not adjacent to nor forming part of the premises in which the sewer easement has been acquired; and (2) that the opening of Pugsley avenue is of greater benefit to the lands south of Lacombe avenue than to the lands of the appellants, although the rate of assessment is the same.

The board of estimate and apportionment provided that the entire cost and expense of this proceeding should be borne by the land within the area of assessment and adopted and fixed the area of assessment. The assessment for benefit by reason of the improvement involved in this proceeding amounted to $76,644.22. Pursuant to section 1003 of the Greater New York charter it was necessary that this sum should " be assessed equally and proportionately, as far as the same may be practicable, upon

the lands and premises" which should be within the area of assessment fixed by the board of estimate and apportionment. Only such lands were included within the area of assessment as the board of estimate and apportionment "deemed benefited by the improvement."

The commissioner of assessment had no power to increase or decrease the area of assessment or to increase or reduce the amount to be assessed. These matters are determined by the board of estimate and apportionment and the cost of acquiring the property involved in the proceeding. The cost and expense having been determined it was the duty of the commissioner of assessment to distribute this sum over the lands within the area of assessment, and the distribution was required to be made in proportion to the benefits received by the improvement. (*Hassen* v. *City of Rochester*, 65 N. Y. 516; 67 N. Y. 528; *Matter of City of New York, West 225th Street* [*Muscoota Street*], 150 App. Div. 223.)

The statute prescribes no exclusive method or rule by which this assessment in proportion to the benefits shall be made. (*Matter of Grant Avenue*, 76 App. Div. 87; affd., 175 N. Y. 509.) In certain cases assessment in proportion to benefits is best secured by the application of the so-called block to block rule of assessment (*Matter of Grant Ave., supra*), in others by adopting a rate per lot abutting on the street acquired (*People ex rel. Scott* v. *Pitt*, 169 N. Y. 521), and where the conditions within the area of assessment are such that the improvement results in unequal benefits to different parcels some method must be adopted which will levy the assessment in proportion to the benefits received. (*Matter of City of New York* [*Spofford Ave.*], 126 App. Div. 740; *Matter of City of New York* [*East 136th St.*], 127 App. Div. 672.)

The basis of the assessment is the benefit derived from the improvement effected by the proceeding, and it is immaterial what theory or principle is adopted provided only that it shall meet the requirement of the statute and

distribute the cost proportionately to the benefits received. In the present case the commissioner of assessment reports: "I have assessed for benefit by reason of this proceeding, every piece or parcel of land within the area of assessment for benefit as determined by the Board of Estimate and Apportionment * * * its share of the cost and expense of this proceeding, in proportion to the amount of actual benefit which each piece or parcel of land has received from this improvement." We shall not stop to comment upon several anomalous results which have arisen from the method of assessment adopted. We shall proceed at once to a consideration of the principle upon which the assessment complained of by the appellants was made. The assessment has been made upon the principle that the contemplated improvement will benefit all the land within the area of assessment equally, whether or not some part of the land is subject to a sewer easement in the city. It was upon this theory that a uniform rate per front lot has been adopted. The application of a uniform rate of assessment to land in which the city has already acquired a sewer easement and to land in which such an easement has not been acquired is violative of the principle that the assessment is to be levied in proportion to benefit. The existence of the sewer easement lessens the benefit derived from the opening of the street to the abutting land, by comparison with the benefit that accrues to land through which no such easement has been acquired. The adoption of a uniform rate of assessment per lot is equivalent to a determination that the acquisition of land for the opening of Pugsley avenue results in equal benefits to lands which are subject to a sewer easement and to lands which are free from such easement. In a case where the abutting lands have already been charged with the cost of the acquisition of the sewer easement the application of a uniform rule of assessment upon lands so incumbered and upon lands not so incumbered involves a double assessment of the lands that have

16

already been charged with the cost of the acquisition of the sewer easement. That the adoption of a uniform rule of assessment in this case operated to subject the lands of the appellants to a double assessment is evident from an examination of the facts of this case. The acquisition by the city of the fee of Pugsley avenue for street purposes included the right to construct a sewer through it. Therefore the unincumbered lands abutting upon Pugsley avenue received the benefit, not only of the avenue to be constructed, but also a sewer which the city has the right to construct in the land, the fee of which it acquired. These unincumbered lands received this benefit of the right to a sewer without being required to pay for it any sum other than the $84.40 per front lot which was assessed upon them in this proceeding. The lands which were already subject to the sewer easement had already been charged with the cost of the acquisition of the easement, and for the benefits supposed to accrue to them from the taking of the fee of Pugsley avenue they are in addition assessed $84.40 per front lot. In so far as the city acquires the fee of land in front of land not subject to sewer easement the city acquires a right to construct a sewer therein without charging the cost of acquiring the easement for a sewer upon the abutting owners. In so far as the land of the appellants is concerned that land is already subject to a sewer easement and the cost of acquiring this easement is to be assessed against their land. Thus the owners of land subject to the sewer easement are required to pay the cost of acquiring this easement and in addition $84.40 per front lot, while the owners of the lands not subject to the sewer easement are assessed $84.40 per front lot but are not required to pay anything for the sewer easement which is included in the fee of Pugsley avenue which the city has acquired in this proceeding. In acquiring the fee abutting the unincumbered land the city acquires not only the right to con-

struct Pugsley avenue but also the right to construct a
sewer therein.    This is a circumstance that secures a sub-
stantial benefit to the abutting land.    It is an element of
benefit or value for which the lands now subject to the
sewer easement will in a separate proceeding be required
to pay.    The acquisition by the city in this proceeding of
the fee of Pugsley avenue results in unequal benefits to
the lands that are unincumbered and to the lands that are
already incumbered by the sewer easement, the cost for
acquiring which has already been charged against them.
The levying of a uniform rate of assessment upon lands
so differently and unequally benefited by the acquisition
of the fee of Pugsley avenue in this proceeding, necessa-
rily results in discrimination and in subjecting the lands
that will be separately charged with the costs of acquir-
ing the sewer easement to a double assessment.    If the
sum of $84.40 per front lot is assessed upon a lot not sub-
ject to the sewer easement and that lot may have the
benefit of a sewer in front of it without being required to
pay any additional amount for the acquisition of the
sewer easement, then the imposition of this same sum
upon the appellants is a double assessment, because the
appellants in the sewer easement proceeding will be
required to pay an additional sum for the cost of acquir-
ing the sewer easement.    In other words, the city in a
separate proceeding has assessed the cost of acquiring the
sewer easement upon the lands of the appellants.    As a
result of both proceedings, the sewer easement proceed-
ing and the present proceeding to acquire the fee of Pugs-
ley avenue, the appellants receive the benefits accruing
from the construction of Pugsley avenue and the right of
the city to construct a sewer therein.    For both of these
benefits the lands of the appellants are assessed in these
two separate proceedings.    The owners of the lands not
subject to the sewer easement are in a much more advan-
tageous position.    As the result of this present proceed-
ing alone, the city has acquired the fee of Pugsley avenue

which includes the right to construct a sewer therein. For these benefits which they receive in common with the appellants, they are only required to pay the same amount which the appellants are required to pay in this proceeding. The right of the city to construct a sewer in Pugsley avenue is included in the acquisition of the fee to that avenue which the city has obtained by virtue of the present proceeding. If $84.40 per front lot is a fair assessment for the benefits that result from this proceeding to those who will not be separately charged with the cost of acquiring the sewer easement, then the imposition of this assessment upon lands that have already been assessed for the cost of the sewer easement, subjects these last mentioned lands to a double assessment. Moreover, the imposition of a uniform rate of assessment upon both unincumbered land and land incumbered with the sewer easement involves a discrimination which increases the net cost to the appellants and reduces the net cost to the owners of lands not incumbered by the sewer easement. This discrimination is exemplified in the case of the lands of the appellant Brooke. If no prior proceeding had been taken to acquire the sewer easement, it is estimated that the net cost of the benefit derived from the opening of Pugsley avenue would have been assessed against the appellant Brooke at $1,950. In this proceeding the net cost to this appellant has been assessed at $12,000. The difference between these two amounts indicates the serious character of the discrimination made against the appellants. The effect of imposing this increased assessment upon the appellants as an incident to acquiring the easement and fee in separate proceedings necessarily operates to relieve the owners of other land abutting upon Pugsley avenue for which the city has acquired the fee in a single proceeding of a fair proportion of the assessment which should have been distributed upon their lands. The lands that in a separate proceeding have been charged with the expense of acquir-

ing the sewer easement and the lands that are. not so incumbered occupy a radically different position for the purpose of assessment for benefits. The adoption of a uniform rate of assessment as equally applicable to these differently situated lands violates the statutory requirement that the cost of the improvement shall be assessed upon the lands benefited in proportion to the benefit received. The principle upon which this assessment for benefits was levied was not only not equal and proportionate to the benefits received, but the principle adopted was such that its application necessarily operated unequally and disproportionately to the benefits received.

As the order appealed from must be reversed for the reasons stated, it seems not to be necessary to discuss the other objection urged that the opening of Pugsley avenue is of greater benefit to the land south of Lacombe avenue than to the lands of the appellants, although the rate of assessment is the same. We cannot say that this objection is without merit, but we refrain from placing our decision upon this ground because the proof in the record on this subject seems to us not to be altogether satisfactory. We concur, however, in the suggestion made at the Special Term by Mr. Justice BIJUR that upon a re-consideration this objection of the appellants should be given careful consideration. To these serious objections to the principle upon which the assessment was levied the respondent makes no adequate answer. That the application of the principle adopted operates in the manner indicated is not disputed. For its answer to these objections the respondent asserts that the "commissioner considered the benefits to be the same" to all the lots within the area of assessment and that the order is not appealable to this court. The conclusion of the commissioner rests for its support entirely upon his opinion that the principle pursuant to which the assessment was levied would distribute the costs of the improvement in proportion to benefits. That

the commissioner was mistaken in this opinion appears from what has already been said as to the effect of the adoption of this principle upon the lands of these appellants. The discriminatory character of the assessment levied was pointed out by the learned justice at Special Term when he refused to confirm the report of the commissioner. While the learned Appellate Division reversed the order of the Special Term it seems from the opinion of the Appellate Division that it misapprehended the nature of the claims of the appellants. In its opinion the Appellate Division said: "It is conceded in the present proceeding that the value of this sewer easement was 90 per cent of the fee value of the property — that is, of the sixty-foot strip, and if the owners had actually received that amount in the prior proceeding for the acquisition of the sewer easement, I do not understand any objections would or could be made to the assessments in the present proceeding. The real grievance of the respondents is, as appears from the affidavits submitted on the motion for a re-argument to confirm the report, that the awards in the prior proceedings have not yet been made." The contention of the appellants, however, is not based at all upon the failure to pay awards which will ultimately be made in the sewer easement proceeding. That such was the contention of the appellants seems to have been assumed by the Appellate Division from the affidavits which were submitted on the motion for a re-argument to confirm the report, but these affidavits, even if we assume that they were properly before the court for its consideration, do not justify this inference because the affidavits were not submitted by the appellants, but by the respondent in its effort to induce the Special Term to change the decision which it had already rendered in favor of the appellants. The objection which the appellants made to the report, at the Special Term, before the Appellate Division and before this court, is not based upon the fact that the awards in the sewer easement proceeding have

not yet been *paid*. Their objection is much more fundamental and strikes at the principle upon which the assessment was made. If this principle is erroneous where the awards in the sewer easement proceeding have not been paid, it would be equally erroneous if those awards had been paid. It is the existence of the easement and the effect of the incumbrance on the value of the appellants' land — not the fact that the easement has not been paid for — which is the foundation of the claim of the appellants that the assessments levied in this proceeding are discriminatory and excessive so far as their lands are concerned. The application of a uniform rate of assessment per lot, when the conditions subject to the assessment are radically different necessarily results in discrimination and the extent of the discrimination is in proportion to the difference existing between the lots which are subject to assessment. It is this principle which it seems to us the learned Appellate Division failed to recognize and apply. The assessor in making the assessment acted upon an erroneous principle, which ignored the radical differences in the benefits conferred upon different lots within the area of assessment, and the assessment made is inconsistent with the requirement of the statute that the cost of the improvement shall be assessed upon the lands in proportion to the benefit received. The views expressed by Judge WILLARD BARTLETT in *People ex rel. Keim* v. *Desmond* (186 N. Y. 232) are peculiarly applicable here and the opinion in that case not only makes it clear that the order appealed from is reviewable here, but that the order appealed from should be reversed.

It follows that the order appealed from should be reversed, with costs, and the matter remitted to the commissioner of assessment.

HISCOCK, COLLIN, CUDDEBACK, HOGAN and POUND, JJ., concur; WILLARD BARTLETT, Ch. J., absent.

Order reversed, etc.